UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
SOUTHERN DIVISION

| | |
|---|---|
| KIRA MARIE HERAL, <br><br> Plaintiff, <br><br> vs. <br><br> SOUTH DAKOTA DEPARTMENT OF SOCIAL SERVICES; MATT ALTHOFF, Cabinet Secretary, South Dakota Department of Social Services, in his individual and official capacity; TERESA M. SCHULTE, Administrative Law Judge, in her individual and official capacity; BETH ADSERO, DSS Benefits Specialist, in her individual and official capacity; KATIE HECK, Regional Operations Manager of Department of Human Services, Long Term Services & Supports Division, in her individual and official capacity; STATE OF SOUTH DAKOTA; and LARRY RHODEN, Governor of South Dakota, in his individual and official capacity, <br><br> Defendants. | 4:25-CV-04186-KES <br><br> ORDER DENYING PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION AND/OR TEMPORARY RESTRAINING ORDER |

Plaintiff, Kira Marie Heral, filed a pro se lawsuit. Docket 1. Along with her complaint, Heral filed a motion for preliminary injunction and/or temporary restraining order. Docket 2. The court granted Heral's motion for an order directing the United States Marshal Service (USMS) to serve all defendants. Docket 11. The court also ordered that each defendant respond to Heral's motion for preliminary injunction and/or temporary restraining order on or before 21 days following the date of service. *Id.* at 3. All defendants have been

served, have answered, and have responded to Heral's motion for preliminary injunction and/or temporary restraining order. Dockets 16, 17, 20, 23–28. For the reasons explained below, Heral's motion for preliminary injunction and/or temporary restraining order (Docket 2) is denied as moot.

## Discussion and Legal Analysis

According to Heral's complaint, defendants "terminated [her] medically necessary HOPE waiver services effective April 5, 2025." Docket 1 at 5. Heral's complaint includes claims for deliberate indifference to serious medical needs in violation of her Fourteenth Amendment right to substantive due process (Count I), violation of her Fourteenth Amendment right to procedural due process (Count II), violation of Title II of the Americans with Disabilities Act (Count III), violation of Section 504 of the Rehabilitation Act (Count IV), a "Monell Liability" claim against the South Dakota Department of Social Services (DSS) and the State of South Dakota for maintaining official policies, customs, and practices that cause constitutional violations (Count V), violation of her equal protection and due process rights under the South Dakota Constitution (Count VII), and negligence and gross negligence (Count VIII). *Id.* at 14–17. Following the termination of HOPE waiver services, Heral alleges that she experienced blood glucose fluctuations requiring emergency intervention. *Id.* at 5, 9. Heral requests temporary injunctive "relief ordering immediate restoration of HOPE waiver services[.]" *Id.* at 5, 18; Docket 2.

South Dakota's Home and Community-Based Options and Person-Centered Excellence (HOPE) waiver program allows the South Dakota

Department of Human Services (DHS) to use Medicaid funding to provide home-based services to Medicaid recipients who, without the services, would require nursing facility care. Docket 23 at 1–2; Docket 25-1. To be eligible for HOPE waiver services under South Dakota law, an applicant must be eligible for Medicaid and must meet five criteria set forth in a South Dakota administrative rule. Docket 23 at 2 (citing S.D. Admin. R. 67:44:03:02 (2024)); Docket 25-2. In November 2023, Heral applied for HOPE waiver services and sought home-based assistance in the categories of chore/homemaker and personal care. Docket 23 at 3; Docket 25-5. Because Heral was undergoing weekly physical therapy and needed assistance getting in and out of the shower, Heral met the nursing facility level of care requirement set by South Dakota Administrative Rule 67:45:01:03 and was approved for participation in the HOPE waiver program. Docket 23 at 4; Docket 25-6 at 5, 10; Docket 25-7. After she was approved for participation, Heral began receiving HOPE waiver services through a "Structured Family Caregiving" program. Docket 23 at 4; Docket 25-8. Specifically, Heral received two hours per week of chore/homemaker services and two hours per week of personal care. Docket 23 at 4; Docket 25-9.

On April 4, 2025, the caregiver living with Heral in her home terminated her caregiving responsibilities and moved out of Heral's home. Docket 23 at 4; Docket 25-10. Heral alleges that she "contacted DSS to restore external home services while maintaining waiver eligibility." Docket 1 at 10. On April 9, 2025, one of the defendants, Beth Adsero, conducted a level-of-care assessment.

3

Docket 1 at 10; Docket 23 at 5; Docket 26-1. Defendants contend that Heral informed Adsero that she was no longer participating in physical therapy and no longer needed assistance getting in and out of the shower. Docket 23 at 5; Docket 26-1 at 15, 34. A nurse consultant reviewed the April 9 assessment and categorized Heral as "self care." Docket 23 at 5; Docket 26-3. Because of the "self care" categorization, Heral no longer qualified for HOPE waiver services. Docket 23 at 5; Docket 26-3. According to Heral, Adsero's April 9 assessment was "inadequate and discriminatory[.]" Docket 1 at 10.

On September 18, 2025, a few days before this action was commenced, Heral submitted a new application for HOPE waiver services. Docket 23 at 6; Docket 27-1. On November 20, a level-of-care assessment was conducted in connection with Heral's new application for HOPE waiver services. Docket 23 at 7; Docket 24 ¶ 8; Docket 27-3. During the November 20 assessment, Heral indicated that she was receiving occupational therapy and needed help with showering, including getting in and out of the shower. Docket 23 at 7; Docket 24 ¶¶ 9, 10; Docket 27-3 at 16, 36. A nurse consultant reviewed the November 20 level-of-care assessment and determined that Heral is eligible for HOPE waiver services. Docket 23 at 7; Docket 24 ¶ 14; Docket 27-4. Because of the November 21 determination that Heral is eligible for HOPE waiver services, defendants contend that her motion for preliminary injunction is moot. Docket 23 at 9–12.

Rule 65 of the Federal Rules of Civil Procedure governs the issuance of temporary restraining orders and preliminary injunctions. Fed. R. Civ. P. 65.

When considering a motion for a temporary restraining order or a preliminary injunction, the court applies the following factors: (1) the probability of success on the merits; (2) the threat of irreparable harm to the movant; (3) the balance between this harm and the injury that granting the injunction will have on other interested parties; and (4) whether the issuance of an injunction is in the public interest. *Dataphase Sys., Inc. v. C.L. Sys., Inc.*, 640 F.2d 109, 114 (8th Cir. 1981) (en banc); *see also Tumey v. Mycroft AI, Inc.*, 27 F.4th 657, 665 (8th Cir. 2022) (recognizing that the standard for analyzing a motion for temporary restraining order is the same as the standard for analyzing a motion for preliminary injunction). The purpose of a preliminary injunction is to preserve the status quo until the court has an opportunity to grant full effective relief. *Tumey*, 27 F.4th at 664 (internal citation omitted). "Requiring [the defendant] to take affirmative action . . . before th[e] issue has been decided on the merits goes beyond the purpose of a *preliminary* injunction." (brackets and emphasis in original) (internal quotation omitted).

While no single factor is dispositive, the Eighth Circuit has instructed that "[t]he two most critical factors for a district court to consider in determining whether to grant a preliminary injunction are (1) the probability that plaintiff will succeed on the merits and (2) whether the plaintiff will suffer irreparable harm if an injunction is not granted." *Chicago Stadium Corp. v. Scallen*, 530 F.2d 204, 206 (8th Cir. 1976) (footnote omitted) (citation omitted). "A preliminary injunction is an extraordinary remedy[.]" *Roudachevski v. All-Am. Care Ctrs., Inc.*, 648 F.3d 701, 705 (8th Cir. 2011). "The burden of proving

that a preliminary injunction should be issued rests entirely with the movant." *Goff v. Harper,* 60 F.3d 518, 520 (8th Cir. 1995) (citation omitted).

In this case, it is not necessary to address the *Dataphase* factors at this time because Heral's request for injunctive relief was mooted by the November 21 determination that she is eligible for HOPE waiver services. " 'In order to invoke the jurisdiction of the federal courts, the parties must demonstrate an actual, ongoing case or controversy within the meaning of Article III of the Constitution.' " *Republican Party of Minn., Third Cong. Dist. v. Klobuchar,* 381 F.3d 785, 789–90 (8th Cir. 2004) (quoting *Iron Cloud v. Sullivan,* 984 F.2d 241, 242 (8th Cir. 1993)); *see also Ringo v. Lombardi,* 677 F.3d 793, 796 (8th Cir. 2012) ("The exercise of judicial power under Art. III of the Constitution depends on the existence of a case or controversy.") (quoting *Preiser v. Newkirk,* 422 U.S. 395, 401 (1975)). "[A]n actual controversy must be extant at all stages of review, not merely at the time the complaint is filed." *Ringo,* 677 F.3d at 796 (alteration in original) (quoting *Preiser,* 422 U.S. at 401); *Gilbert v. Nix,* 990 F.2d 1044, 1046 (8th Cir. 1993) (same).

" 'When, during the course of litigation, the issues presented in a case lose their life because of the passage of time or change in circumstances . . . and a federal court can no longer grant effective relief, the case is considered moot' and cannot be heard by a court." *Life Inv. Ins. Co. of Am. v. Fed. City Region, Inc.,* 687 F.3d 1117, 1121 (8th Cir. 2012) (quoting *Ali v. Cangemi,* 419 F.3d 722, 723 (8th Cir. 2005)); *see also Ringo,* 677 F.3d at 796 ("When a case

. . . no longer presents an actual, ongoing case or controversy, the case is moot and the federal court no longer has jurisdiction to hear it.") (quoting *Neighborhood Transp. Network, Inc. v. Pena*, 42 F.3d 1169, 1172 (8th Cir. 1994)).

Heral requests that the court issue a preliminary injunction "ordering immediate restoration of HOPE waiver services[.]" Docket 1 at 5, 18; Docket 2. But the record demonstrates that as of November 21, 2025, Heral is eligible for HOPE waiver services. Docket 23 at 7; Docket 24 ¶ 14; Docket 27-4. Because of this change in circumstances after Heral filed her motion for preliminary injunction and/or temporary restraining order, the relief Heral seeks in her motion has already occurred. Thus, this court can no longer grant any effective preliminary injunctive relief to Heral, and her motion for preliminary injunction and/or temporary restraining order (Docket 2) is denied as moot. *Agrigenetics, Inc. v. Rose*, 62 F.3d 268, 270–71 (8th Cir. 1995) (holding that an appeal from an order denying a motion for preliminary injunction seeking to prohibit former employees from engaging in activity in violation of a covenant not to compete is moot because the term of the noncompetition period had expired and directing the district court to vacate its order denying preliminary injunctive relief on the merits and to enter an order denying the request for preliminary injunctive relief as moot); *Forbes v. Ark. Educ. Television Commc'n Network Found.*, 982 F.2d 289 (8th Cir. 1992) (per curiam) (dismissing as moot appeal involving only question of preliminary injunction when meaningful preliminary injunctive relief is no longer possible).

7

After defendants responded to Heral's motion for preliminary injunction and/or temporary restraining order, Heral filed a reply that is titled "Plaintiff's Opposition to Defendants' Motion to Dismiss for Mootness." Docket 30 (capitalization in original omitted). It appears that Heral may have interpreted defendants' response as a request that the court dismiss the entire case as moot, but that is not what defendants request. Defendants request only that the court deny Heral's request for preliminary injunctive relief as moot and "allow the case to proceed on the merits." Docket 23 at 12. Because the case will proceed on the merits, Heral may litigate her allegation that defendants in April 2025 "terminated [her] HOPE waiver services based on a flawed assessment that excluded consideration of autism-related cognitive disabilities." Docket 30 at 2. The denial of Heral's request for preliminary injunctive relief does not preclude Heral from seeking compensatory damages or nominal damages for alleged constitutional violations.

Because she is subject to periodic reassessments, Heral claims that the capable of repetition yet evading review exception applies. Docket 30 at 7–8. As the court has explained, the issue of whether the assessment process is discriminatory or unconstitutional, as Heral alleges in her complaint, remains and will be litigated as the case proceeds on the merits. Although Heral asserts that "[e]ach reassessment under the unchanged discriminatory system presents risk of recurrence[,]" the mere possibility of recurrence is not a reason to grant preliminary injunctive relief. *Id.* at 8. Possible or speculative harm is not sufficient to support a preliminary injunction. *Adam-Mellang v. Apartment*

*Search, Inc.*, 96 F.3d 297, 299 (8th Cir. 1996); *Gard v. Dooley*, 2014 WL 4243586, at *1 (D.S.D. Aug. 26, 2014).

Finally, Heral notes that as of the date of her reply, nine days after the determination that she was eligible for HOPE waiver services, she had not received any services. Docket 30 at 9. But none of the named defendants provide the homemaking, personal care, and nursing services Heral requested. Determining that Heral is eligible for HOPE waiver services is the only equitable relief any of the named defendants could provide in this case. Third-party service providers are tasked with providing the services Heral has requested (Docket 24 ¶ 16), but the court does not have authority to order injunctive relief against a nonparty. *Thompson v. Freeman*, 648 F.2d 1144, 1147 (8th Cir. 1981); *JDR Indus., Inc. v. McDowell*, 121 F. Supp. 3d 872, 892 (D. Neb. 2015) (stating that "the general rule is that injunctions may not be enforced against nonparties."). Further, defendants have submitted an affidavit stating that a case management specialist with the South Dakota Department of Human Services will contact third-party service providers on behalf of Heral and estimating that Heral will begin receiving HOPE waiver services within a short period of time. Docket 24 ¶¶ 15, 17. Heral has not submitted any evidence to dispute this affidavit.

For these reasons, it is ORDERED that Heral's motion for preliminary

injunction and/or temporary restraining order (Docket 2) is denied as moot.

Dated December 5, 2025.

                        BY THE COURT:

                        /s/ *Karen E. Schreier*
                        KAREN E. SCHREIER
                        UNITED STATES DISTRICT JUDGE