UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

SOUTHERN DIVISION

KIRA MARIE HERAL,

Plaintiff,

vs.

SOUTH DAKOTA DEPARTMENT OF SOCIAL SERVICES; MATT ALTHOFF, Cabinet Secretary, South Dakota Department of Social Services, in his individual and official capacity; TERESA M. SCHULTE, Administrative Law Judge, in her individual and official capacity; BETH ADSERO, DSS Benefits Specialist, in her individual and official capacity; KATIE HECK, Regional Operations Manager of Department of Human Services, Long Term Services & Supports Division, in her individual and official capacity; STATE OF SOUTH DAKOTA; LARRY RHODEN, Governor of South Dakota, in his individual and official capacity; KERRI KONECHNE, LTSS Case Management Specialist, Department of Human Services, in her individual and official capacity; DANIELLE SCHAEFFER, R.N., DHS Nurse Consultant, in her individual and official capacity; TONI ROUNDS, R.N., DHS Nurse Consultant, in her individual and official capacity; HEATHER KRZMARZICK, Director, Long Term Services and Supports, South Dakota Department of Human Services, in her individual and official capacity; THOMAS MARTINEC, Deputy Secretary, Department of Human Services, in his individual and official capacity; LESLIE LOWE, HCBS

4:25-CV-04186-KES

ORDER DENYING PLAINTIFF'S MOTION TO COMPEL, DENYING PLAINTIFF'S MOTION TO ALTER OR AMEND, AND GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

| | |
|---|---|
| Operations Administrator, Long Term Services and Supports, in her individual and official capacity; and SOUTH DAKOTA DEPARTMENT OF HUMAN SERVICES (DHS), Division of Long Term Services and Supports (LTSS),<br><br>Defendants. | |

Plaintiff, Kira Heral, moves the court to compel defendants to produce or supplement their privilege log. Docket 57. Heral also moves the court to alter or amend its order denying plaintiff's motion for a preliminary injunction and granting plaintiff's motion to effectuate service on newly added defendants (Docket 58) under Federal Rule of Civil Procedure 59(e) or, alternatively, Federal Rule of Civil Procedure 54(b) and the court's inherent authority. Docket 62. Defendants oppose both motions. Docket 63; Docket 70.

Defendants move the court for an order granting summary judgment and dismissing Heral's claims with prejudice in their entirety. Docket 65. Heral opposes the motion. Docket 72.

**BACKGROUND**

Viewing the evidence in the light most favorable to the non-moving party on summary judgment, Heral, the facts are: In December 2023, Heral began participating in South Dakota's Home and Community-Based Options and Person-Centered Excellence (HOPE) waiver program. Docket 66 at 1; Docket 71 at 1. The HOPE waiver program "allows the Department of Human Services (DHS) to use Medicaid dollars to provide home and community-based services to individuals who, without the services, would require nursing facility care."

Docket 66 at 1; Docket 71 at 1. In 2023 and into 2024, Heral received "two hours per week of homemaking services, which was later increased to 4.5 hours per week, and two hours per week of personal care[.]" Docket 66 at 1; Docket 71 at 2.

To be eligible for HOPE waiver services under South Dakota law, an applicant must meet the following requirements:

> (1) The individual is age sixty-five or older, or eighteen or older with a qualifying disability;
>
> (2) The individual is receiving supplemental security income (SSI) or has an income level within three hundred percent of the SSI standard benefit amount as provided in § 67:46:04:13, and meets the eligibility criteria established in chapter 67:46:03 or would be eligible for Medicaid under article 67:46 if residing in a nursing facility;
>
> (3) The individual meets the nursing facility level of care as determined by the department according to chapter 67:45:01;
>
> (4) The individual resides or will reside at home or in a HOPE waiver-approved home and community-based setting while receiving HOPE waiver services; and
>
> (5) The individual has an individual support plan prepared under the provisions of § 67:44:03:04 and requires one or more of the services provided under this chapter.

S.D. Admin. R. 67:44:03:02 (2024); Docket 66 at 1; Docket 71 at 2. To determine whether an individual meets the "nursing facility level of care" requirement in South Dakota Administrative Rule 67:44:03:02(3), "an employee of DHS's Division of Long Term Services and Supports (LTSS) conducts a level-of-care assessment, which is then reviewed by consulting medical personnel." Docket 66 at 2; Docket 71 at 3.

"At the time Heral originally applied for HOPE waiver services in 2023, her initial level-of-care assessment revealed that she was undergoing weekly physical therapy for pelvic floor dysfunction and that she needed assistance getting in and out of the shower." Docket 66 at 2; Docket 71 at 3. "Under those circumstances, Heral met the nursing facility level of care requirement and was approved for participation in the HOPE waiver program." Docket 66 at 2; Docket 71 at 3-4.

In October 2024, Heral received notice that she was found eligible for the Structured Family Caregiving (SFC) program. Docket 66 at 2; Docket 71 at 4; Docket 73-10 at 1. The SFC program allows HOPE waiver participants to reside in their home with a designated principal caregiver who assists with "daily intermittent personal care and other needs from the principal caregiver[.]" Docket 52-1 at 55; Docket 66 at 2; Docket 71 at 4. Heral's designated principal caregiver under the SFC program was Gracesyn Uherhewar. Docket 66 at 2; Docket 71 at 5. Heral's SFC program coverage became effective on November 1, 2024. Docket 26-4 at 1.

In April 2025, Uherhewar moved out of Heral's home and terminated her caregiving responsibilities. Docket 66 at 2; Docket 71 at 5; *see* Docket 25-10. This move triggered a reassessment[1] of Heral's level of care. Docket 66 at 3. On

[1] Heral claims the reassessment was discretionary, and defendants claim it was mandatory. Docket 71 at 5. The 2024 HOPE Waiver Manual provides, "If a participant's needs change prior to [the incremental reassessments], he/she *must* be reassessed at that time as well." Docket 52-1 at 28 (emphasis added). It further provides, "If the change in a participant's condition is such that the Level of Care becomes questionable (the participant no longer appears to meet

April 9, 2025, Beth Adsero, an LTSS Case Management Specialist, conducted the level of care reassessment at Heral's home. Docket 66 at 3; Docket 71 at 5-6; Docket 26-1 at 1. Pursuant to the 2024 HOPE Waiver Manual, Adsero then sent the assessment results to Danielle Schaeffer, a DHS nurse consultant, for review. Docket 66 at 3; Docket 71 at 6; *see* Docket 52-1 at 10. In the assessment form, Schaeffer categorized Heral as "Self Care," meaning Heral no longer qualified for HOPE waiver services. Docket 26-3; Docket 66 at 3; Docket 71 at 6-7; *see also* S.D. Admin. R. 67:44:03:02 (listing the qualifying criteria for HOPE waiver services).

The Department of Social Services (DSS) informed Heral of the termination of her eligibility by letter dated April 17, 2025. Docket 26-4; Docket 66 at 3; Docket 71 at 7-8. The letter also informed Heral that she could challenge the decision "[i]f [she] believe[d] [DSS] made a mistake" or if Heral did "not agree with action the Department ha[d] taken[.]" Docket 26-4 at 2; Docket 66 at 3; Docket 71 at 8. Additionally, the letter explained that Heral could request a hearing "by filing a signed, written request for a hearing to the Office of Administrative Hearings, . . . by calling[,] . . . or by email[.]" Docket 26-4 at 3; Docket 66 at 3; Docket 71 at 8.

On May 29, 2025, Heral contacted the Office of Administrative Hearings and requested a hearing. Docket 28-1 at 60; Docket 66 at 3; Docket 71 at 9.

---

the level of care criteria for HOPE waiver) a new Level of Care determination *is required.*" *Id.* at 29 (emphasis added). And the November Home Care Assessment form specifies that the reason for the assessment was "[s]ignificant change in status reassessment[.]" Docket 26-1 at 2.

Administrative Law Judge (ALJ) Teresa Schulte issued a notice of hearing, which provided that a hearing had been scheduled. Docket 28-1 at 47. The notice also informed Heral that the issue to be decided was "[w]hether Kira Heral is eligible for Medical Assistance benefits[.]" Docket 28-1 at 47; Docket 66 at 3; Docket 71 at 9. The notice further informed Heral of the rights afforded to her at the hearing.[2] Docket 28-1 at 47-48; Docket 66 at 3-4; Docket 71 at 9. Additionally, the notice provided that the decision of the ALJ could be appealed to the circuit court and the South Dakota Supreme Court. Docket 28-1 at 48; Docket 66 at 4; Docket 71 at 9. "The Office of Administrative Hearings mailed [the notice] to Heral on June 23, 2025—one month prior to the hearing, which was scheduled for July 22, 2025." Docket 66 at 4; Docket 71 at 10.

At the beginning of the hearing, ALJ Schulte stated:

> The parties are advised they have the right to provide testimony and evidence, the right to inspect all documents and evidence, the right to compel witnesses to attend and testify on your behalf[,] the right to ask questions of the other party and any witnesses, the right to be present during the taking of all evidence[,] and the right to remain silent if they so choose. The record today consists of the tape recorded testimony and any documents or others that are offered and received, nothing outside the record is considered.

[2] The notice informed Heral of the following rights: (1) the right to be present; (2) the right to present her case or have an attorney or other person present the case for her; (3) the right to be present for the giving of evidence; (4) the right to inspect all documentary evidence before and during the hearing; (5) the right to examine and cross-examine witnesses; (6) the right to submit evidence in support of her case; and (7) the right to request subpoenas to compel the attendance of witnesses or the production of evidence. Docket 28-1 at 47-48; Docket 66 at 3-4; Docket 71 at 9.

Docket 73-2 at 1. Heral attended the telephonic hearing and presented oral testimony in support of her case. Docket 66 at 4; Docket 71 at 10; *see* Docket 73-2. ALJ Schulte also gave Heral the opportunity to cross-examine witnesses and present reasons as to why her HOPE waiver services should not be terminated. Docket 66 at 4; Docket 71 at 10; *see* Docket 73-2.

After the hearing, ALJ Schulte "issued a [n]otice of [p]ending [d]ecision, which discussed the factual findings and legal conclusions reached as a result of the hearing." Docket 28-1 at 40-46; Docket 66 at 4; Docket 71 at 11. ALJ Schulte applied the eligibility requirements under S.D. Admin. R. 67:44:03:02 and concluded that Heral "is not eligible for Medical Assistance under the HOPE waiver program." Docket 28-1 at 42, 46; Docket 66 at 4; Docket 71 at 11-12.

The notice also informed Heral that the Office of Administrative Hearings would accept written objections to the pending decision for an additional ten days. Docket 28-1 at 40; Docket 66 at 5; Docket 71 at 12. Heral submitted six pages of written objections and four additional exhibits for consideration in ALJ Schulte's final decision. Docket 28-1 at 6-11; Docket 66 at 5; Docket 71 at 12. On August 18, 2025, ALJ Schulte issued the final decision, which adopted the pending decision in full and affirmed DHS's finding of ineligibility, but did not consider Heral's objection evidence. Docket 28-1 at 5; Docket 66 at 5; Docket 71 at 12.

"On September 18, 2025, Heral reapplied for HOPE waiver services by submitting a new application to DSS." Docket 27-1; Docket 66 at 5; Docket 71

at 13. On November 13, 2025, Katie Heck, a regional operations manager of LTSS, assigned Heral's new level of care assessment to Kerri Konechne and Stephanie Fleming, DHS case management specialists. Docket 66 at 5; Docket 71 at 13. "Konechne and Fleming conducted Heral's new level of care assessment on November 20, 2025." Docket 66 at 5; Docket 71 at 13. During the assessment, Heral reported that she was scheduled for occupational therapy two times per week. Docket 27-3 at 36; Docket 66 at 5; Docket 71 at 14. Heral also reported that she needed "[h]ands-on help" with showering, including physical assistance getting in and out of the shower. Docket 27-3 at 16; Docket 66 at 5; Docket 71 at 14.

After Konechne and Fleming completed the level of care assessment, the assessment form was sent to Toni Rounds, a DHS nurse consultant, for review. Docket 66 at 6; Docket 71 at 14-15. Rounds qualified Heral as eligible for in-home HOPE waiver services. Docket 27-4; Docket 52-1 at 23; Docket 66 at 6; Docket 71 at 15. Konechne thereafter authorized Heral's HOPE waiver services, which consists of six hours per week of in-home care and began on December 2, 2025. Docket 66 at 6; Docket 71 at 15-16. "Heral continues to receive six hours per week of in-home care." Docket 66 at 6; Docket 71 at 16.

## PROCEDURAL HISTORY

On September 22, 2025, Heral commenced this action against the State of South Dakota, DSS, and certain DHS and DSS staff, among others. Docket 1. Her original complaint asserted a variety of federal- and state-law claims, including claims under 42 U.S.C. § 1983, Title II of the Americans with

Disabilities Act (ADA), and § 504 of the Rehabilitation Act (RA). *Id.* Along with her complaint, Heral moved for a preliminary injunction seeking restoration of the HOPE waiver services that had been discontinued following the April 2025 reassessment. Docket 2. While that motion was pending, Heral reapplied for the program, was reassessed, and again qualified for HOPE waiver services. Docket 31 at 6. As a result, the court denied her request for a preliminary injunction as moot. *Id.*

On April 9, 2026, Heral filed an amended complaint adding several defendants, including DHS and a number of DHS employees involved in the administration of the HOPE waiver program. Docket 41 at 2-4. Although the amended complaint contains additional factual allegations and a new claim of retaliation, it largely reasserts the claims alleged in the original complaint, including claims under 42 U.S.C. § 1983, the ADA, and the RA. *Id.* at 24-28. That same day, Heral also filed a renewed motion for preliminary injunction. Docket 42.

On June 5, 2026, defendants produced a privilege log, which contained documents withheld from production on the basis of the attorney/client and work product privileges. Docket 63 at 2; Docket 57-3 at 1. The following morning, Heral sent an email to defense counsel containing alleged "deficiencies" in the defendants' privilege log. Docket 57-3 at 2-3. Heral concluded her email by stating that she was available by call or email to meet and confer, but that if she did not hear from the defendants within the next four days, she would "consider filing a motion to compel." *Id.* at 3. On June 11,

2026, Heral filed a motion to compel defendants to produce or supplement their privilege log. Docket 57. Defendants filed a response in opposition to the motion. Docket 63.

On June 15, 2026, this court entered its order denying plaintiff's motion for a preliminary injunction and granting plaintiff's motion to effectuate service on newly added defendants. Docket 58. Heral filed a motion to alter or amend that order on June 28, 2026. Docket 62. Defendants filed a response in opposition to the motion. Docket 70.

On July 10, 2026, defendants filed a motion for summary judgment, requesting that Heral's claims be dismissed with prejudice in their entirety. Docket 65. Heral filed a response in opposition to the defendants' motion. Docket 72. On October 28, 2026, the parties filed a joint stipulation for dismissal of all individual-capacity claims asserted in the amended complaint against DSS cabinet secretary, Matt Althoff. Docket 91.

## DISCUSSION

### I. Heral's Motion to Compel

Heral moves the court under Federal Rule of Civil Procedure 37 and D.S.D. Civ. LR 37.1 to compel defendants to produce or supplement their privilege log. Docket 57. Rule 37(a)(1) provides that "[o]n notice to other parties and all affected persons, a party may move for an order compelling disclosure or discovery." Fed. R. Civ. P. 37(a)(1). But Rule 37(a)(1) also requires that "[t]he motion must include a certification that the movant has in good faith conferred or attempted to confer with the person or party failing to make disclosure or

discovery in an effort to obtain it without court action." *Id.*; *see also* D.S.D. Civ. LR 37.1 ("A party filing a motion concerning a discovery dispute must file a separate certification describing the good faith efforts of the parties to resolve the dispute."). A court may deny a motion to compel for failure to comply with the meet-and-confer requirement. *Robinson v. Potter*, 453 F.3d 990, 995 (8th Cir. 2006).

"The certification mentioned in Rule 37 must include 'the names of the parties who conferred or attempted to confer, the manner by which they communicated, the dispute at issue, as well as the dates, times, and results of their discussions, if any." *Lureen v. Holl*, 4:17-CV-04016-LLP, 2017 WL 3834739, at *3 (D.S.D. Aug. 31, 2017) (citation omitted). " 'Good faith' requires that the parties made a genuine attempt to resolve the discovery dispute without involving the court." *Id.* (citation omitted). "Finally, 'conferment' requires the parties 'to have had an actual meeting or conference.' " *Id.* (citation omitted). "Unilaterally sending correspondence demanding that the other side comply with a discovery request does not satisfy the requirement." *Id.* In other words, the meet-and-confer requirement requires the moving party to "personally engage in two-way communication with the nonresponding party to meaningfully discuss each contested discovery dispute in a genuine effort to avoid judicial intervention." *Bass v. Hattum*, 3:23-CV-03014-RAL, 2025 WL 1736516, at *1 (D.S.D. June 23, 2025) (quoting *Lureen*, 2017 WL 3834739, at *3).

Here, Heral's motion to compel does include a "certification of good faith effort to resolve discovery dispute[.]" Docket 57-2. But that certification does not satisfy the meet-and-confer requirement under Rule 37 and D.S.D. Civ. LR 37.1. In her certification, Heral states that she "sent a detailed email to defense counsel identifying eight specific deficiencies in the privilege log and requesting production or supplementation by June 10, 2026." Docket 57-2 at 2. Heral's email further provided, "I am available to call or email and confer regarding any of the above. If I do not receive a response by Wednesday, June 10, 2026, I will consider filing a motion to compel." Docket 57-3 at 3. Because Heral merely sent unilateral correspondence demanding that defendants comply with her request, her certification does not satisfy the meet-and-confer requirement under Rule 37 and D.S.D. Civ. LR 37.1. *See Lureen*, 2017 WL 3834739, at *4 ("Nor is the meet-and-confer requirement satisfied by the sending of a letter that indicated that a motion to compel would be filed if the opposing party did not comply with discovery requests."). Thus, Heral's motion to compel (Docket 57) is denied.

## II. Heral's Motion to Alter or Amend

Heral moves the court to alter or amend its order denying plaintiff's motion for a preliminary injunction and granting plaintiff's motion to effectuate service on newly added defendants (Docket 58) under Federal Rule of Civil Procedure 59(e) or, alternatively, Federal Rule of Civil Procedure 54(b) and its inherent authority. Docket 62 at 1-2. But "[b]y its terms, only Rule 60(b) encompasses a motion filed in response to an order. Rule 59(e) motions are

motions to alter or amend a *judgment*, not any nonfinal order." *Broadway v. Norris*, 193 F.3d 987, 989 (8th Cir. 1999); *see also Banister v. Davis*, 590 U.S. 504, 507 (2020) (Rule 59(e) "enables a party to request that a district court reconsider a just-issued *judgment*." (emphasis added)). Because Heral seeks relief from an order rather than a judgment, the court construes her motion as a motion for reconsideration under Rules 60(b) and 54(b).

**A. Rule 60(b)**

"Rule 60(b) empowers courts to relieve a party 'from a final judgment, order, or proceeding' for several specific reasons and 'any other reason that justifies relief.' " *Contreras v. United States*, 4:17-CV-04075-LLP, 2021 WL 3679173, at *1 (D.S.D. July 21, 2021) (quoting Fed. R. Civ. P. 60(b)(1)-(6)). "Under Rule 60, '[t]he district court "may" relieve a party from an order when, for example, the party demonstrates "mistake, inadvertence, surprise, or excusable neglect" or "any other reason justifying relief from the operation of a judgment." ' " *Id.* (quoting *Elder-Keep v. Aksamit*, 460 F.3d 979, 984 n.5 (8th Cir. 2006)). "Rule 60(b) 'provides for extraordinary relief which may be granted only upon an adequate showing of exceptional circumstances.' " *Id.* (quoting *Harley v. Zoesch*, 413 F.3d 866, 870 (8th Cir. 2005)). Rule 60(b) "is not a vehicle for simple reargument on the merits." *Broadway*, 193 F.3d at 990.

In her motion, Heral takes issue with the court's view of letters from her medical providers. Docket 62 at 2-4. Heral also disagrees with the court's use of the term "nursing services" in its order. *Id.* at 5. Additionally, Heral claims that an assessment document relied on by the court had internal inconsistencies. *Id.* at 5-6. Finally, Heral argues that the court's order fails to

address treating-therapist assessments that were part of the record. *Id.* at 6-8. But none of these arguments demonstrate mistake, inadvertence, surprise, excusable neglect, or any other grounds for relief under Rule 60(b). Rather, Heral merely takes issue with the court's view of the evidence, the language the court used in its order, and its decision on her motion for a preliminary injunction. Heral cannot use this motion as a vehicle to reargue the merits of her motion for preliminary injunction. Thus, Heral has not demonstrated a reason justifying relief under Rule 60(b).

**B. Rule 54(b)**

Rule 54(b) "provides that when fewer than all claims are resolved, the district 'court may direct the entry of a final judgment as to one or more' claims or parties, but in the absence of such a direction, any other form of decision 'which adjudicates fewer than all the claims . . . is subject to revision at any time before the entry of [final] judgment.' " *K.C. 1986 Ltd. P'ship v. Reade Mfg.*, 472 F.3d 1009, 1016-17 (8th Cir. 2007) (alterations in original) (quoting Fed. R. Civ. P. 54(b)). "[A] motion for reconsideration serves the limited function 'to correct manifest errors of law or fact or to present newly discovered evidence.' " *Woodward v. Credit Serv. Int'l Corp.*, 132 F.4th 1047, 1058 (8th Cir. 2025) (citation omitted). And "[a] district court does not abuse its discretion in denying a motion for reconsideration used for [] an 'impermissible purpose.' " *SPV-LS, LLC v. Transamerica Life Ins. Co.*, 912 F.3d 1106, 1111 (8th Cir. 2019) (citation omitted); *see also Preston v. City of Pleasant Hill*, 642 F.3d 646, 652 (8th Cir. 2011) (affirming the district court's denial of a motion to reconsider in

part because its purpose of "repeating arguments the district court had already rejected" was improper).

Here, Heral had not presented any manifest errors of law or fact or presented newly discovered evidence. As explained above, she merely takes issue with the court's view of the evidence, the language used in the order, and the ultimate determination on her motion for a preliminary injunction. Thus, the court finds that Heral is using her motion for reconsideration for an impermissible purpose, and her motion to alter or amend (Docket 62) is denied.

**III. Defendants' Motion for Summary Judgment**

Summary judgment is appropriate if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party may satisfy this burden by presenting evidence that there is no genuine dispute of material fact or by showing that the nonmoving party has failed to present evidence supporting an element of its claim on which it bears the ultimate burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). The moving party must inform the court of the basis for its motion and identify the portions of the record that show there is no genuine issue in dispute. *Hartnagel v. Norman*, 953 F.2d 394, 395 (8th Cir. 1992).

To avoid summary judgment, "[t]he nonmoving party may not 'rest on mere allegations or denials, but must demonstrate on the record the existence of specific facts which create a genuine issue for trial.' " *Mosley v. City of Northwoods*, 415 F.3d 908, 910 (8th Cir. 2005) (quoting *Krenik v. Cnty. Of Le*

*Sueur*, 47 F.3d 953, 957 (8th Cir. 1995)). Summary judgment "must be denied if on the record then before it the court determines that there will be sufficient evidence for a jury to return a verdict in favor of the nonmoving party." *Krenik*, 47 F.3d at 957. Summary judgment is precluded if there is a genuine dispute of fact that could affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).

The parties filed a joint stipulation for dismissal of all individual-capacity claims against Matt Althoff. Docket 91. And Heral does not oppose summary judgment as to her claims for deliberate indifference to serious medical needs (Count I), attorney's fees and costs (Count VI), South Dakota constitutional violations (Count VII), or negligence and gross negligence (Count VIII). Docket 72 at 29-31. Nor does Heral oppose summary judgment as to her claims against defendants Teresa Schulte, Larry Rhoden, or Toni Rounds. *Id.* at 30-31. Thus, the court dismisses all individual-capacity claims asserted against Althoff, grants summary judgment as to the claims conceded by Heral, and only considers the merits of Heral's remaining claims.

**A. § 1983 Claim**

Many of the allegations contained under Count II of Heral's amended complaint are conclusory and not specific to any named defendant. Docket 41 at 24-25. "A complaint which lumps all defendants together and does not sufficiently allege who did what to whom, fails to state a claim for relief because it does not provide fair notice of the grounds for the claims made against a particular defendant." *Tatone v. SunTrust Mortg., Inc.*, 857 F. Supp. 2d 821,

831 (D. Minn. 2012); *see also Startup v. Bear Stearns Residential Mortg. Corp.*, 2011 WL 13227926, at *2 (C.D. Cal. Feb. 14, 2011) ("If a defendant is not mentioned in the body of the complaint, the complaint does not state a cause of action against that defendant."). Thus, the court first clarifies which defendants Heral actually asserts Count II against.

Count II of Heral's amended complaint is asserted against "[a]ll [i]ndividual [d]efendants" in their "[i]ndividual and [o]fficial [c]apacity[ies.]" Docket 41 at 24. But except for Konechne and Adsero, Heral does not mention any other remaining defendants by name in the § 1983 section of her amended complaint or the facts related to that claim. *See id.* at 6-22, 24-25. Although she mentions actions taken by Jeremy Lippert and the "Clerk of Courts," they are not named defendants in this action. *See id.* at 25. Thus, this court only considers Heral's claim under Count II as against Konechne and Adsero.

Heral alleges that Konechne and Adsero engaged in conduct in violation of 42 U.S.C. § 1983. Docket 41 at 24-25. Specifically, Heral claims that Konechne and Adsero conducted the HOPE waiver assessments without reviewing available medical documentation. *Id.* Additionally, Heral asserts that Konechne completed her individual service plan before making a level-of-care or financial eligibility determination. *Id.*

"Section 1983 imposes liability on anyone who, under color of state law, deprives a person of any rights, privileges, or immunities secured by the Constitution and laws." *Hunter v. South Dakota Dep't of Soc. Servs.*, 377 F. Supp. 3d 964, 977 (D.S.D. 2019) (citation and internal quotation marks

omitted). But "[s]ection 1983 establishes no substantive rights; it is merely a vehicle for seeking a federal remedy for violations of federally protected rights." *Foster v. Wyrick*, 823 F.2d 218, 221 (8th Cir. 1987). Thus, "§ 1983 merely provides a mechanism for enforcing individual rights 'secured' elsewhere, i.e., rights independently 'secured by the Constitution and the laws' of the United States." *Gonzaga Univ. v. Doe*, 536 U.S. 273, 285 (2002). Heral claims she was deprived of her substantive and procedural due process rights under the Fourteenth Amendment to the United States Constitution. Docket 41 at 24-25.[3]

**1. Individual Capacity**

Heral asserts her § 1983 claim against defendants Konechne and Adsero in their individual capacities. Docket 41 at 24. A § 1983 claim for money damages may proceed against state officials who are sued in their individual capacities. *Hafer v. Melo*, 502 U.S. 21, 27 (1991). The qualified immunity doctrine, however, will function to protect from liability those defendants whose actions were objectively reasonable in light of clearly established constitutional

[3] Heral also cites 42 U.S.C. § 1396a(a)(3) and 42 C.F.R. § 441.301 as bases for her § 1983 claim. *Id.* But in response to defendants' motion for summary judgment, Heral concedes that 42 U.S.C. § 1396a(a)(3) cannot be invoked as the basis for imposing liability on the defendants under § 1983. Docket 72 at 6. Nor can 42 C.F.R. § 441.301 serve as the basis for a § 1983 claim. *See Thurman v. Med. Transp. Mgmt. Inc.*, 982 F.3d 953, 957 (5th Cir. 2020) ("[A]gency regulations cannot independently confer federal rights enforceable under § 1983 for one simple reason: Those cases make clear that it is Congress, and not an agency of the Executive Branch, that creates federal rights. The Third, Fourth, Sixth, Ninth, and Eleventh Circuits have all reached the same conclusion." (internal citations omitted)).

rights. *Stanton v. Sims*, 571 U.S. 3, 4-5 (2013); *see also Ambrose v. Young*, 474 F.3d 1070, 1077 (8th Cir. 2007) ("The qualified immunity standard gives ample room for mistaken judgments by protecting all but the plainly incompetent or those who knowingly violate the law." (quoting *Hunter v. Bryant*, 502 U.S. 224, 229 (1991))).

To determine whether qualified immunity is appropriate, the court considers "(1) whether the facts shown by the plaintiff make out a violation of a constitutional or statutory right, and (2) whether that right was clearly established at the time of the defendant's alleged misconduct." *Brown v. City of Golden Valley*, 574 F.3d 491, 496 (8th Cir. 2009). "If the answer [to whether a constitutional right was violated] is no, [the court will] grant qualified immunity," and enter summary judgment in favor of defendants. *Grayson v. Ross*, 454 F.3d 802, 808 (8th Cir. 2006). As part of her § 1983 claim, Heral claims violations of both substantive due process and procedural due process under the Due Process Clause of the Fourteenth Amendment. Docket 41 at 24-25.

**a. Substantive Due Process**

The substantive component of the Due Process Clause "protects individual liberty against 'certain government actions regardless of the fairness of the procedures used to implement them.' " *Collins v. City of Harker Heights*, 503 U.S. 115, 125 (1992) (quoting *Daniel v. Williams*, 474 U.S. 327, 331 (1986)). "In analyzing a substantive due process claim, . . . [f]irst, we consider whether [Heral] possessed a right arising under the Fourteenth Amendment."

*Ganley v. Minneapolis Park & Recreation Bd.*, 491 F.3d 743, 749 (8th Cir. 2007). "[T]he Due Process Clause specially protects those fundamental rights and liberties which are, objectively, 'deeply rooted in this Nation's history and tradition,' and 'implicit in the concept of ordered liberty,' such that 'neither liberty nor justice would exist if they were sacrificed[.]' " *Washington v. Glucksberg*, 521 U.S. 702, 720-21 (internal citations omitted).

Although Heral's amended complaint does not contain a short and plain statement of a substantive due process claim, the court liberally construes the complaint and finds that Heral appears to claim that she has a fundamental right to receive HOPE waiver benefits. Docket 41 at 24-25; *see also Topchian v. JPMorgan Chase Bank, N.A.*, 760 F.3d 843, 849 (8th Cir. 2014) ("A *pro se* complaint must be liberally construed[.]"). But the United States Supreme Court has held that the provision or funding of health services for ordinary citizens is "not a matter of constitutional entitlement." *Harris v. McRae*, 448 U.S. 297, 318 (1980). Thus, Heral does not have a fundamental right to receive HOPE waiver benefits, and her substantive due process claim fails as a matter of law.

**b. Procedural Due Process**

Heral also argues that defendants Konechne and Adsero violated her procedural due process rights. Docket 41 at 24-25. "Procedural due process imposes constraints on governmental decisions which deprive individuals of 'liberty' or 'property' interests within the meaning of the Due Process Clause[.]" *Mathews v. Eldridge*, 424 U.S. 319, 332 (1976). "A procedural due process

claim consists of two elements: (i) deprivation by state action of a protected interest in life, liberty, or property, and (ii) inadequate state process." *Reed v. Goertz,* 598 U.S. 230, 236 (2023). Thus, before Heral can argue that defendants Konechne and Adsero violated her procedural due process rights, she must identify the right at issue.

Citing *Goldberg v. Kelly*, 397 U.S. 254 (1970), Heral alleges that "[m]edicaid participants have a property interest in continued benefits that cannot be terminated without due process." Docket 41 at 24. And she alleges that Konechne and Adsero violated her procedural due process rights by conducting the April and November assessments without reviewing available medical documentation. *Id.* Additionally, Heral asserts that Konechne violated her procedural due process rights by completing her individual service plan before making a level-of-care or financial eligibility determination. *Id.* at 24-25.

But Konechne and Adsero's actions in completing the assessments and individual service plan do not alone establish that Heral did not receive due process before her HOPE waiver services were terminated. And the undisputed facts in this case clearly show that Heral received the process she was owed before the termination of those services.

In *Goldberg*, the United States Supreme Court stated that "[t]he fundamental requisite of due process of law is the opportunity to be heard . . . at a meaningful time and in a meaningful manner." *Goldberg*, 397 U.S. at 267 (internal citations omitted). Additionally, the *Goldberg* court addressed other indicia of procedural due process, such as adequate notice of the hearing, the

ability to confront witnesses, the opportunity to present evidence and be represented by counsel, and the right to an impartial decisionmaker. *Id.* at 267-271.

Here, Heral received a letter informing her of the termination of her eligibility, her right to challenge the decision, and the steps to request a hearing. Docket 26-4 at 1-3; Docket 66 at 3; Docket 71 at 8. Heral thereafter contacted the Office of Administrative Hearings to request a hearing. Docket 28-1 at 60; Docket 66 at 3; Docket 71 at 9. One month before the hearing, Heral received a notice of hearing, which provided that a hearing had been scheduled, informed Heral of the issue to be decided and the rights that would be afforded to her at the hearing, and provided that the decision of the administrative law judge could be appealed to the circuit court and the South Dakota Supreme Court. Docket 28-1 at 47-48; Docket 66 at 3-4; Docket 71 at 9.

At the beginning of the hearing, which Heral attended, ALJ Schulte again advised the parties of the rights afforded to them at the hearing. Docket 73-2 at 1. ALJ Schulte also gave Heral the opportunity to present oral testimony in support of her case and to cross-examine witnesses. Docket 66 at 4; Docket 71 at 10; *see* Docket 73-2.

After the hearing, ALJ Schulte issued a notice of pending decision, which informed Heral that she could file objections to the pending decision and that she could appeal the final decision to the circuit court. Docket 66 at 4-5; Docket 71 at 11-12. Heral submitted six pages of written objections and four

additional exhibits to be considered by ALJ Schulte in her final decision. Docket 66 at 5; Docket 71 at 12. Thus, regardless of Konechne and Adsero's actions in completing the assessments and individual service plan, Heral received the process she was due before her HOPE waiver services were terminated.

Because Heral has failed to make out a violation of substantive due process or procedural due process, Konechne and Adsero are entitled to qualified immunity, and summary judgment is granted as to Heral's § 1983 claim against Konechne and Adsero in their individual capacities.

**2. Official Capacity**

Heral also asserts her § 1983 claim against Konechne and Adsero in their official capacities. Docket 41 at 24. "[A] suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office." *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989). And under the Eleventh Amendment, a suit against a state agency is a suit against the state itself. *Monroe v. Arkansas St. Univ.*, 495 F.3d 591, 594 (8th Cir. 2007). Thus, in a suit for money damages, "neither a State nor its officials acting in their official capacities are 'persons' under § 1983." *Will*, 491 U.S. at 71.

Konechne is employed by DHS and Adsero is employed by DSS. Docket 41 at 3. Thus, because both defendants are "officials" of South Dakota, neither are "persons" under § 1983. As such, Heral's § 1983 claim for money damages against Konechne and Adsero in their official capacities fails as a matter of law.

"Of course, a state official in his or her official capacity, when sued for injunctive relief, would be a person under § 1983 because 'official-capacity actions for prospective relief are not treated as actions against the State.' " *Will*, 491 U.S. at 71 n.10 (quoting *Kentucky v. Graham*, 473 U.S. 159, 167 n.14 (1985)). But as explained above, Heral has failed to make out a violation of substantive due process or procedural due process. As such, Heral's § 1983 claim against Konechne and Adsero for prospective relief in their official capacities fails, and summary judgment is granted as to that claim.

**B. Americans with Disabilities Act**

Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. In her amended complaint, Heral alleges that defendants DSS and DHS discriminated against her based on her disability in violation of Title II of the ADA. Docket 41 at 25-26. In their brief in support of their motion for summary judgment, defendants DSS and DHS assert that they are immune from such a claim. Docket 67 at 15-21.

"The Eleventh Amendment grants a state immunity from suits brought in federal court by its own citizens as well as citizens of another state." *Alsbrook v. City of Maumelle*, 184 F.3d 999, 1005 (8th Cir. 1999). "Congress can, however, abrogate this immunity or a state can waive it." *Id.* But the Eighth Circuit has held that "the extension of Title II of the ADA to the state was not a proper

exercise of Congress's power under Section 5 of the Fourteenth Amendment." *Id.* at 1010.[4] Thus, the enactment of Title II of the ADA did not validly abrogate the state's Eleventh Amendment immunity. *Id.*; *see also Palesch v. Mo. Comm'n on Hum. Rts.*, 233 F.3d 560, 570 (8th Cir. 2000) (holding that state agency defendants had immunity from suit under the Eleventh Amendment for alleged ADA violation). As such, DSS and DHS are immune from suit under the ADA, and summary judgment is granted as to Heral's ADA claim.

### C. Section 504 Rehabilitation Act

In her amended complaint, Heral alleges that defendants DSS and DHS "excluded [her] from participation in the HOPE waiver program and denied her its benefits based on the nature and type of her disability diagnoses, in violation of Section 504 and its implementing regulations." Docket 41 at 26.

"Section 504 of the Rehabilitation Act prohibits 'any program or activity' that receives federal financial assistance from discriminating against a qualified individual with a disability." *Jim C. v. United States*, 235 F.3d 1079, 1080 (8th Cir. 2000) (quoting 29 U.S.C. § 794(a)). "To prevail on a claim under § 504, a plaintiff must demonstrate that: (1) [s]he is a qualified individual with a disability; (2) [s]he was denied the benefits of a program or activity of a public entity which receives federal funds, and (3) [s]he was discriminated against

---

[4] Of course, in *United States v. Georgia*, 546 U.S. 151, 159 (2006), the United States Supreme Court held that Title II of the ADA validly abrogates a state's Eleventh Amendment immunity for conduct that actually violates the Fourteenth Amendment. But as explained above, Heral has not established a violation of the Fourteenth Amendment.

based on h[er] disability." *Gorman v. Bartch*, 152 F.3d 907, 911 (8th Cir. 1998) (footnote omitted). To make a showing under the third element, the plaintiff must show that she "was the victim of 'discrimination' 'solely' because of [her] disability." *Peebles v. Potter*, 354 F.3d 761, 765 (8th Cir. 2004).

Except for the claim quoted above and a statement that Heral "incorporates all preceding allegations[,]" Heral's § 504 claim in her amended complaint does not set forth any facts or specific allegations to make out a prima facie case of a Rehabilitation Act violation. Docket 41 at 26. Heral does not allege or present facts to show that she meets the definition of a "qualified individual" under § 504 in that section of her amended complaint. *Id.* Nor does Heral allege or present facts to demonstrate that she was discriminated against solely based on her disability. *Id.* Thus, Heral has failed to make out a prima facie claim of a § 504 violation, and summary judgment is granted as to that claim.

**D. Retaliation**

Heral alleges that she was subjected to unlawful retaliation under the ADA and Rehabilitation Act. Docket 41 at 27-28. The Eighth Circuit evaluates ADA and Rehabilitation Act retaliation claims under the *McDonnell Douglas* burden-shifting framework. *Amir v. St. Louis Univ.*, 184 F.3d 1017, 1025 (8th Cir. 1999); *see also Argenyi v. Creighton Univ.*, 703 F.3d 441, 448 (8th Cir. 2013) ("Since the ADA and the Rehabilitation Act are 'similar in substance,' we treat the case law interpreting them as 'interchangeable.' " (citation omitted)). "Under the *McDonnell Douglas* framework, a plaintiff . . . first must establish a

prima facie case of retaliation." *Amir*, 184 F.3d at 1025. To establish a prima facie case of "unlawful retaliation under the ADA [or Rehabilitation Act], a plaintiff must show that (1) she engaged in a statutorily protected activity, (2) the [defendants] took an adverse action against her, and (3) there was a causal connection between the adverse action and the protected activity." *Hill v. Walker*, 737 F.3d 1209, 1218 (8th Cir. 2013).

Heral alleges, and defendants do not appear to dispute, that she engaged in a statutorily protected activity by filing this federal lawsuit on September 22, 2025. Docket 41 at 28. And she claims that the defendants took an adverse action against her three days later by ceasing communication with her as a consequence of her filing of the suit. *Id.* But this is not an adverse action.

"To be adverse, a retaliatory action must be enough to dissuade a reasonable person from engaging in the protected activity; 'petty slights or minor annoyances' cannot qualify." *A.C. ex rel. J.C. v. Shelby Cnty. Bd. Of Educ.*, 711 F.3d 687, 698 (6th Cir. 2013) (quoting *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006)). "Indeed, not 'every unkind act' is sufficiently adverse." *Higdon v. Jackson*, 393 F.3d 1211, 1219 (11th Cir. 2004) (quoting *Shotz v. City of Plantation*, 344 F.3d 1161, 1181 (11th Cir. 2003)). An adverse action must produce a "tangible negative effect." *Id.*

Heral has not shown that defendants' action in ceasing communication with her produced a tangible negative effect. Rather, the evidence demonstrates that defendants acted favorably on Heral's request for the reinstitution of services when she submitted a new HOPE waiver application on September 18,

2025—seven days before the email relied on by Heral was sent. Docket 27-1; Docket 66 at 5; Docket 71 at 13. And although Heral may find the email she relies on unkind, it is not enough to dissuade a reasonable person from engaging in the protected activity. Thus, Heral has failed to establish a prima facie case of retaliation, and summary judgment is granted as to that claim.

**CONCLUSION**

Based on the foregoing, it is ORDERED:

1. That Heral's motion to compel (Docket 57) is denied.
2. That Heral's motion to alter or amend (Docket 62) is denied.
3. That all individual-capacity claims asserted against defendant Matt Althoff are dismissed.
4. That defendants' motion for summary judgment (Docket 65) is granted.

Dated November 6, 2026

BY THE COURT:

/s/ *Karen E. Schreier*
KAREN E. SCHREIER
UNITED STATES DISTRICT JUDGE